W. G. HOLMES AND WIFE, A. C. HOLMES, v. ATLANTIC COAST LINE RAILROAD COMPANY ET AL.

(Filed 6 April, 1921.)

1. **Carriers of Passengers—Alighting from Train—Proper Assistance— Negligence—Damages—Insult—Punitive Damages.**

    Passengers alighting from a train at a station are entitled to reasonable and proper assistance, and when the conductor has been made aware of a physical infirmity of a very old woman, and that her condition required a stepbox or an ordinary box from the lower step to the ground, which he could readily and easily have furnished, but insultingly refused to do so, the company is not only responsible in actual damages for the injury proximately caused, but in punitive damages to be awarded in the discretion of the jury.

2. **Appeal and Error—Objections and Exceptions—Evidence.**

    Exception to evidence should be specific when a part thereof is unobjectionable, and a general exception thereto cannot be sustained on appeal.

3. **Appeal and Error— Verdicts— Nonsuit— Peremptory Instructions— Evidence.**

    Verdicts of juries are accepted as right on appeal unless some legal error has been committed by the trial judge sufficient to set them aside, and unless there is such, the action of the trial judge in refusing a motion to nonsuit, or its equivalent, a peremptory instruction upon the evidence, will not be disturbed on appeal.

APPEAL by defendants from *Daniels, J.,* at November Term, 1920, of COLUMBUS.

*Donald McCracken and S. Brown Shepherd for plaintiffs.*
*Rountree & Carr for defendants.*

PER CURIAM.  The *feme* plaintiff was a passenger on the train of the defendant railroad company, 19 August, 1919, traveling from Wilmington, N. C., to Bolton, N. C.  She was very old and feeble and so informed the conductor, requesting him, at the time, to assist her in alighting from the train and to have a box for the purpose, which was not done.  A boy who was standing near the train when it stopped at the station offered to go for a box, which was near by, but the conductor refused to let him do so, and threatened to "carry her on if she could not get off," and was rude and rough to her, using insulting language. She sat on the floor of the platform and slid or bumped down the steps after the conductor had said, "Are you coming off or not?" to which she replied, "Well, if I have to get off without any help and expose myself and hurt myself I will have to do so."  She added, "He could not have talked meaner to me."  She further testified that it was too far from the ground for her to step from the car, and she was severely injured in attempting to do so; that she had been ruptured and "her ruptures were torn loose"; that she nearly fainted and had to lie down for ten days and suffered great pain.  The jury returned a verdict for the plaintiff, assessing the compensatory damages at $400 and the punitive damages at $100.  Judgment thereon, and the defendant appealed. The two instructions requested by the defendant were sufficiently covered by the charge.  The real question was whether the jury believed the plaintiff or the conductor, and they believed the former.  It was the duty of the defendant's conductor to render her such assistance for . alighting from the car as was reasonably necessary in her weak physical condition.  She was very old and had been ruptured.  The conductor was notified that she needed help; he was put on his guard, but says he forgot it.  The plaintiff was entitled to proper assistance as she was aged and feeble or infirm, which, if not apparent to the conductor, was made known to him by the son of the plaintiff, and by her before she alighted.  *Morarity v. Durham Traction Co.,* 154 N. C., 586; Moore on Carriers, 682; *Hinshaw v. R. R.,* 118 N. C., 1052-1055; *R. R. v. Miller,* 23 Am. St. Rep., 308.  This controversy would not have arisen if conductors would always treat their passengers with proper consideration.  Courtesy and politeness are cheap commodities, costing little in the beginning but paying well in the end, while rudeness never pays and often proves to be very expensive.  It is the conductor's duty to see that his employer does not suffer by his omission of duty, and especially by his lack of civility and proper attention to those who, because of apparent or known feebleness, cannot help themselves or alight safely from the cars.  *Lanier v. Pullman Co.,* 180 N. C., 406.  The verdict may not be supported by the facts, but we must assume that it is as there is nothing to authorize us to impeach it, and we have proceeded

on the hypothesis of its correctness in what we have said. There was evidence here that step-boxes were seen on the train and the use of one of them would have saved the company a vast deal of trouble and annoyance, not to speak of the money loss.

The ruling of the judge as to punitive damages was correct in every particular. There was evidence tending to show inexcusable conduct on the part of the conductor and such treatment of this old and feeble woman as justified the imposition of punitive damages, which may be allowed when there is an element of fraud, malice, such a degree of negligence as indicates reckless indifference to consequences, oppression, insult, rudeness, mere caprice, willfulness or some other element of aggravation in the act or omission causing the injury. *Holmes v. R. R.* 94 N. C., 318-323; Thompson on Carriers of Passengers, 157; 3 Southerland on Damages, 270; *Ammons v. R. R.,* 140 N. C., 198 (*S. c.,* 138 N. C., 559; *Wilson v. R. R.,* 142 N. C., 340; *Stanford v. Grocery Co.,* 143 N. C., 427; *Stewart v. Lumber Co.,* 146 N. C., 47; *Hansley v. R. R.,* 115 N. C., 607; *Lanier v. Pullman Co.,* 180 N. C., 406. The other exceptions are without substantial merit.

The objection to evidence is general, whereas some of it at least is competent. The exception, therefore, cannot be sustained. The objection should, in such a case, be specific and designate that part of the evidence supposed to be incompetent. *S. v. Ledford,* 133 N. C., 714; *Kennedy v. Trust Co.,* 180 N. C., 225-229; *Lanier v. Pullman Co.,* 180 N. C., 406.

The charge of the court submitted the case to the jury pointedly and fully, and properly refused a nonsuit and the peremptory instruction requested by the defendant. The verdict, as we have said, may be wrong, but we have to accept it as right, unless there was some error in law for which it should be set aside, and we have found none which justifies a reversal.

No error.